IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID BROWN,

*Plaintiff,*

v.

CITY OF PHILADELPHIA, *et al.,*

*Defendants.*

CIVIL ACTION
NO. 18-1126

**PAPPERT, J.**                                                    **April 16, 2020**

**MEMORANDUM**

Plaintiff David Brown filed a civil rights lawsuit alleging that two Philadelphia

Police Department Officers entered his home illegally and subjected him to excessive

force while arresting him.  Brown filed his lawsuit *pro se* and after a number of

procedural fits and starts, the Court referred Brown's case to the Prisoner Civil Rights

Panel a second time.  Schnader Harrison Segal & Lewis LLP subsequently entered its

appearance for Brown and represented him through trial.[1]  Trial began on February 25,

2020, and after two days of testimony from five witnesses, the jury found in favor of the

Defendants—Officer Michael McCafferty and Officer William Kolb.  After trial,

Brown—once again proceeding *pro se*—filed a Motion to Alter or Amend the Judgment

and a Motion for a New Trial.  (ECF Nos. 118 & 121.)

In the two nearly identical Motions, Brown contends (1) the verdict was against

the weight of the evidence; (2) the Court erred in allowing evidence of Brown's prior

convictions; (3) the Court erred in allowing evidence of Brown's gun arrest without

---

[1]      The Court is grateful to the Schnader firm, particularly trial counsel Matthew Korenoski and
Randall Hsia for their excellent work and professionalism.

informing the jurors that a state court later suppressed evidence of the firearm; (4) he was prejudiced by being handcuffed in open court outside the presence of the jury; and (5) his attorneys provided him inadequate representation by virtue of their conflict of interest with the City of Philadelphia.  Defendants filed Responses to both Motions. (ECF Nos. 120 & 129.)  For the reasons that follow, the Court denies Brown's Motions in their entirety.

I

A

Trial testimony showed that around 10:22 PM on March 30, 2017, Officers McCafferty and Kolb responded to reports of a suspected burglary near 1340 South Melville Street in Southwest Philadelphia.  Specifically, a woman told the police that she heard noises coming from the rear of her property and expressed concern that an intruder might be using a ladder to break into her neighbors' second-story windows. Officers McCafferty and Kolb investigated the surrounding area for suspicious activity. They walked one block west onto South 46th Street—as the homes on that street shared an alley with the properties on South Melville Street—and came upon 1353 South 46th Street.  The Officers entered that residence without a search warrant.  That house, the Officers later learned, belonged to David Brown.  None of these facts are in dispute.

The parties' stories then diverged.  Brown testified first.  According to him, the Officers barged through his front door, which was closed and locked, for no apparent reason.  The Officers searched the first floor of his home, and Brown—who was in his upstairs bedroom at the time—became concerned when he heard voices coming from

2

downstairs.  Brown testified that he stuck his head out of the bedroom door to find two Officers pointing their guns at him and demanding that he leave the room.  Brown complied, but the Officers nonetheless twisted his arms behind his back as they forced him down the stairs.

Brown claimed that after the Officers dragged him downstairs, he repeatedly asked them why they entered his home.  But instead of the Officers providing an explanation, Brown testified that they slammed him to the ground, where they punched, kicked, slapped and restrained him by applying pressure to his neck, back and legs.  During this alleged beating, Brown stated that one of the Officers slammed him so forcefully against a mirror that it shattered, causing the flying shards to cut his face.  The Officers then handcuffed Brown, put him into a police car and drove him to the local police station.

The Officers described the evening's events far differently.  They testified that during their investigation of a possible burglary, they saw that the door to Brown's house was wide open.  The Officers stated that it was unusual to see an open front door in a high-crime neighborhood at nearly 10:30 PM on a cold night.  The Officers entered the house to investigate.  As they did a sweep of the first floor, one Officer explained that he heard an upstairs window opening and went outside where he witnessed a man toss a firearm out of a second-story window.  The Officers testified that they then proceeded up the stairs, where they arrested Brown without the use of force.  The Officers agreed that Brown complied with their orders and did not resist.  At trial, Brown denied throwing a gun out the window.

The jurors also heard from two other witnesses—Officers Steven Wheeler and John Weber—whose accounts of that night corresponded with the Defendants' testimony.  A limited number of exhibits were also introduced, including a mugshot of Brown taken that night after being arrested for the firearms violation.

B

Prior to trial, Brown filed a Motion *in Limine* seeking to prohibit the Officers from introducing evidence of his prior convictions to impeach his character for truthfulness.  (ECF No. 88.)  Brown had been convicted of the following three crimes in New Jersey: (1) resisting arrest in 2016; (2) burglary in 2016; and (3) aggravated assault in 2011.  (Mot. *in Limine* 2, ECF No. 88.)  The Court concluded the convictions were admissible under Federal Rule of Evidence 609(a)(1)(A).  *See generally* (Mem. Op., ECF No. 109).  At trial, Brown's counsel—apparently seeking to inoculate Brown—told the jury in his opening statement about Brown's convictions.

II

A

"The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ."  Fed. R. Civ. P. 59(a)(1)(A).  Although Rule 59(a) does not enumerate specifics, a court may grant a new trial for: "(1) improper admission or exclusion of evidence; (2) improper instructions to the jury; (3) misconduct of counsel; (4) newly discovered evidence; or (5) a finding that the jury's verdict is against the weight of the evidence."  *Davis v. Gen. Accident Ins. Co. of Am.*, 153 F. Supp. 2d 598, 600 (E.D. Pa. 2001) (citing *Griffiths v. Cigna Corp.*, 857 F. Supp. 399, 410–11 (E.D. Pa.

4

1994), *aff'd*, 60 F.3d 814 (3d Cir. 1995) (unpublished)).  The decision whether to grant a

new trial is within the sound discretion of the district court.  *See City Select Auto Sales*

*Inc. v. David Randal Assocs., Inc.*, 885 F.3d 154, 163 (3d Cir. 2018).

In evaluating a motion for a new trial on a claim of improper admission of

evidence, the court first determines whether an error was made, and if so, "whether

that error was so prejudicial that refusal to grant a new trial would be inconsistent

with substantial justice." *Farra v. Stanley-Bostitch, Inc.*, 838 F. Supp. 1021, 1026 (E.D.

Pa. 1993) (internal citations and quotation marks omitted).  Motions for new trials on

the basis that the verdict was contrary to the weight of the evidence, however, should

be granted only when "the great weight of the evidence cuts against the verdict and . . .

[ ] a miscarriage of justice would result if the verdict were to stand." *Leonard v.*

*Stemtech Int'l Inc.*, 834 F.3d 376, 386 (3d Cir. 2016) (internal citations and quotations

marks omitted).  The power to grant a new trial is limited "to ensure that [it] does not

substitute its judgment of the facts and the credibility of the witnesses for that of the

jury." *Id.* (quoting *Delli Santi v. CNA Ins. Cos.*, 88 F.3d 192, 201 (3d Cir. 1996)).

B

A court may alter or amend a judgment pursuant to Federal Rule of Civil

Procedure 59(e) if the moving party shows: (1) an intervening change in controlling law;

(2) the availability of new evidence that was not previously available; or (3) the need to

correct a clear error of law or fact necessary to prevent manifest injustice.[2] *In re*

*Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017).  Although the

Third Circuit Court of Appeals has not adopted a precise definition of "clear error" or

---

[2]      As Brown does not point to any intervening change in the law or newly available evidence,
the Court interprets his Rule 59(e) Motion to rely solely on the third basis for relief.

"manifest injustice," the moving party must show that the court committed a "direct,

obvious, [or] observable error" or a "wholesale disregard, misapplication, or failure to

recognize controlling precedent." *In re Energy Future Holdings Corp.*, 904 F.3d 298,

311–12 (3d Cir. 2018) (internal quotation marks omitted) (quoting *Manifest Injustice*,

Black's Law Dictionary (10th ed. 2014), and *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th

Cir. 2015)).  A motion to alter or amend the judgment should be granted only

"sparingly," and the parties are not free to relitigate that which the court has already

decided.  *Ruscitto v. United States*, 2014 WL 3955666, at *1 (W.D. Pa. Aug. 12, 2014)

(citations omitted).  Such a motion is also not the proper vehicle for the moving party to

"advance additional arguments that the litigant could have made sooner."  *Id.* at *2

(citations omitted).[3]

### III

### A

Brown first contends that the verdict is against the weight of the evidence

admitted at trial.  (Mot. to Alter or Amend J. ("Mot.") 1, ECF No. 118.)[4]  When a party

alleges the verdict is against the weight of the evidence, the court may grant a new trial

"only when the record shows that the jury's verdict resulted in a miscarriage of justice

---

[3]       Within fourteen days of a party filing a post-trial motion, the movant must either "(a) order a
transcript of the trial by a writing delivered to the Court Reporter Supervisor, or (b) file a verified
motion showing good cause to be excused from this requirement."  E.D. Pa. Local Rule 7.1(e).  Failure
to do so is grounds for dismissal for lack of prosecution.  *Id.*  More than a month has elapsed since
Brown filed both of his Motions, and he has neither ordered a transcript nor filed a motion to be
excused from that requirement.  It is within the Court's discretion to dismiss Brown's post-trial
motions for lack of prosecution.  *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 402 n.2
(3d Cir. 2003).  Because Brown is incarcerated and *pro se,* the Court will nonetheless review his
arguments on the merits.

[4]       Brown's two Motions are nearly identical, so the Court cites to the first Motion he filed—the
Motion to Alter or Amend the Judgment—unless otherwise indicated.

or where the verdict, on the record, cries out to be overturned or shocks the conscience."
*Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991).

Brown references no testimony, cites no exhibits, and provides no factual or legal arguments to support his claim; he leaves it up to the Court to summarize the evidence presented to the jury.  Again, the two-day trial included testimony from five witnesses. Brown testified as the sole witness for his case-in-chief.  For the defense, Officers McCafferty and Kolb took the stand, along with Officers Wheeler and Weber, who were both present at Brown's house on March 30, 2017.  The jury also viewed a limited number of exhibits admitted into evidence, including Brown's mugshot.

The testimony left the jury to decide between two competing narratives.  Brown's version of events involved the Officers barging through his locked front door for no apparent reason, followed by their brutal assault that left him injured and bruised. The Officers' account of that night, however, portrayed them investigating a burglary and entering a home because its front door was wide open.  Upon entering, one Officer claimed that he saw Brown throw a gun out a window, and they subsequently arrested him without the use of any force.  Brown's mugshot, taken on the night of the arrest, showed no cuts, bruises or scrapes on his face.

The jurors heard the testimony, evaluated the exhibits and assessed the credibility of the witnesses.  They evidently believed the Officers' version of the events. Brown offers nothing to suggest that the verdict constitutes a miscarriage of justice or shocks the conscience, and the Court will not disturb the jury's verdict.

B

Brown next contends that the jury instructions were erroneous, but as the Court interprets this claim, he actually argues that the Court erred by allowing in his prior convictions for impeachment purposes. (Mot. 1–2.) According to Brown, "the probative value of [his] past convictions [is] outweighed by unfair prejudice and the risk of confusing the jury." (Mot. 2.) More specifically, he argues that the admission of his 2016 burglary conviction confused the jurors into thinking that he committed burglary at 1340 South Melville Street. (*Id.*)

Prior to trial, Brown's counsel filed a Motion *in Limine* seeking to exclude his prior convictions for resisting arrest, aggravated assault and burglary. (ECF No. 88.) The Court ruled that the prior convictions were admissible under Federal Rule of Evidence 609(a)(1)(A). *See* (Mem. Op., ECF No. 109.) Under Rule 609(a)(1)(A), evidence of a conviction punishable by imprisonment for than one year to impeach a witness's character for truthfulness must be admitted, subject to Rule 403.[5] Because Rule 609 is subject to Rule 403, the Third Circuit requires courts to weigh the following four factors against the potential prejudice in admitting a conviction: (1) the nature of the conviction, (2) the time elapsed since the conviction, (3) the importance of the witness's testimony to the case, and (4) the importance of the credibility to the claim at hand. *Sharif v Picone*, 740 F.3d 263, 272 (3d Cir. 2014) (citing *United States v. Greenidge*, 495 F.3d 85, 97 (3d Cir. 2007)).

The Court applied the four *Greenidge* factors, which on balance weighed in favor of admission. (Mem. Op. 2–4.) With respect to the nature of the convictions, the aggravated assault and resisting arrest convictions were less probative of honesty, but

---

[5]     The parties do not dispute that Brown's convictions were punishable by imprisonment for more than one year. (Mem. Op. 2.)

the burglary conviction weighed in favor of admission because cheating and stealing adversely affect an individual's character for honesty and integrity. (*Id.* 2–3.) The remaining three factors also weighed in favor of admission, considering the convictions were not so remote in time, and Brown's testimony and credibility were crucial to his claims. (*Id.* at 3.) The Court acknowledged Brown's concern that the jury would think he had a propensity to act in conformance with his prior bad acts, but the Court explained that it would mitigate any risk of prejudice by providing a limiting instruction. (*Id.* at 3–4.) The Court provided that instruction at trial. Brown's concern of juror confusion was also undermined by the fact that his 2016 burglary conviction occurred in a different state and in a different year than the events giving rise to his Fourth Amendment claims.

To the extent Brown seeks to challenge the Court's previous ruling, he offers no new factual or legal arguments suggesting that the Court was incorrect.[6] The Court will not relitigate the admissibility of his prior convictions, which Brown can appeal.

C

Brown's third argument relates to the Officers' testimony that Brown was arrested for a firearms violation after they witnessed him toss a gun from his window. (Mot. 2.) According to Brown, admitting evidence of the arrest without informing the

---

[6]      Brown mentions two cases to support his argument that the prior convictions should have been excluded. (Mot. 2.) The first case, *Williams v. O'Connor*, is irrelevant because it does not involve the issue of whether to admit prior convictions for impeachment purposes. 2017 WL 445748 (E.D. Pa. Feb. 2, 2017). The second case that Brown cites, *Jackson v. City of Pittsburgh*, also lends him no support. 492 F. App'x 297 (3d Cir. 2012) (unpublished). The plaintiff in *Jackson* filed suit against four police officers under § 1983 for various alleged constitutional violations. *Id.* at 298. At trial, the district court allowed evidence of the plaintiff's prior convictions, which the Third Circuit affirmed on appeal. *Id.* at 300–01. In that case, however, the convictions were admitted for impeachment by contradiction purposes rather than to impeach the plaintiff's character for truthfulness under Rule 609. *Id.*

jury that the gun charge was later dropped was erroneous because it "had nothing to do with the illegal search of [his] home" and there was "no evidence of a gun when the Officers broke into [his] home and assaulted [him]." (*Id.* at 2–3; Mot. New Trial 3, ECF No. 121.)

First, the gun arrest was relevant to Brown's excessive force claim because he alleged that Officers McCafferty and Kolb used excessive force when they arrested him—either as a potential burglary suspect or for tossing the gun out the window. Second, to the extent that Brown's true grievance is that the jury never learned that the gun charge was dropped after a state court judge suppressed the firearm, Brown waived that issue. In his pretrial memorandum, Brown's counsel informed the Court that "Brown does not contest Defendants' motion *in limine* to exclude evidence of the [state] court's decision to suppress the firearm." (Pl.'s Pretrial Mem. 3 n.1, ECF No. 92.) *See also Williams v. O'Connor*, 2017 WL 445748, at *3 (E.D. Pa. Feb. 2, 2017) (excluding evidence of state court's suppression decision in a subsequent § 1983 action because (1) probative value of the suppression is substantially outweighed by unfair prejudice and the risk of confusing the jury, and (2) the suppression decision is not binding on officer in a § 1983 action).

### D

Brown next argues that he is entitled to relief because (1) officers from the Philadelphia Detention Center handcuffed him outside of the presence of the jury but within view of the public sitting in the gallery, and (2) the officers pulled out their handcuffs at one point in front of the jury while Brown's attorney yelled at him. (Mot. 3.) According to Brown, it is possible that friends and family of the jurors watched the

trial, saw Brown enter and exit the courtroom in handcuffs, and relayed that information to the jurors—thereby creating undue prejudice against him.  *See* (*id.*)  First of all, the Court recalls no spectators in the courtroom, other than court personnel.  Moreover, at no point during trial did Brown's counsel object to the officers' use of handcuffs to escort him in and out of the courtroom.  Brown's argument also fails for both legal and factual reasons.

In *Illinois v. Allen*, the Supreme Court recognized that requiring a criminal defendant to appear in shackles before a jury may result in an unfair trial.  397 U.S. 337 (1970).  The Third Circuit has since extended the principles from *Allen* to apply in civil cases involving prisoner-plaintiffs.  *Sides v. Cherry*, 609 F.3d 576, 581 (3d Cir. 2010).  Before a prisoner-plaintiff may appear before a jury in physical restraints, the court must balance the prejudice to the prisoner-plaintiff against the need to maintain safety or security.  *Id.* (citations omitted).  There is no legal requirement, however, that the courtroom be cleared of all public onlookers before a prisoner-plaintiff is seen wearing restraints, so long as it is outside of the jury's presence.

Brown was incarcerated at the time of his trial, but the jury did not know that.  He wore civilian clothing—including a buttoned-up shirt and a pair of trousers—and was never physically restrained in front of the jury.  He offers no evidence that any juror knew, or learned through a third-party, that Brown had been handcuffed as he entered and exited the courtroom.  Brown's second allegation—that the officers pulled out their handcuffs while the jury was still in the courtroom—also lacks factual support.  Brown points to no evidence or anything in the transcript to substantiate this claim, nor could he.  The allegation is false.

11

E

In Brown's final argument, he claims that the law firm representing him at trial had a conflict of interest with the City of Philadelphia. (Mot. 4.) He accuses his attorneys of being "complicit in a conspiracy with the State and City of Philadelphia" by "controll[ing] [his] information output to the jury in efforts to defraud [him] of justice." (*Id.* at 4.) To support this claim, he states that his attorneys selected a "jury pool being all white with no black men or [women]," and that his counsel cursed at him "using abusive language in front of the jury." (*Id.* at 4.)

To the extent that Brown raises an ineffective assistance of counsel claim, that claim fails because he has no constitutional right to counsel in a civil lawsuit, let alone effective assistance of counsel. *See Kushner v. Winterthur Swiss Ins. Co.*, 620 F.2d 404, 408 (3d Cir. 1980). Nor is Brown's civil rights lawsuit the proper forum to prosecute a separate malpractice action.[7] *Id.*

The accusations Brown lodges against his attorneys are, again, false. His counsel did not curse him out in front of the jury. Nor did his attorneys select a jury of all white men. Of the eight jurors selected for this case, there were four men and four women. Two were African American—one man and one woman. Brown participated

---

[7]    Brown's conflict-of-interest malpractice claim appears to arise from a clause in the client engagement letter that his attorneys sent to him. Brown attached that letter to his Motions, which states, in relevant part:

> This Firm has represented, and will continue to represent, the City of Philadelphia in various matters unrelated to this case. The City of Philadelphia has waived any conflict of interest that arises from our representing you in this case. Your signature on this letter indicates that you likewise consent to the Firm's continued representation of the City of Philadelphia in any matters unrelated to your case.

(Mot. 7.) Brown wrote in the margin of that letter that he was "ill advised and ill represented," but offers no evidence to support any such assertion. (*Id.*)

with his attorneys in selecting the jurors, and at no time during trial did he object to

the jury's racial composition.[8]

      An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[8]     The Court does not interpret Brown to be raising a *Batson* challenge, but even if he were, that claim has been waived.  *See Batson v. Kentucky*, 476 U.S. 79 (1986); *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 631 (1991) (extending *Batson* challenges to apply in civil cases). Brown failed to raise a *Batson* objection at the time when peremptory challenges were exercised.  *See Gov't of the Virgin Islands v. Forte*, 806 F.2d 73, 75 (3d Cir. 1986).